**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANUP TAMAKUWALA,<br>*an incapacitated person*,<br>by and through his legal guardian,<br>**HETAL TAMAKUWALA,**<br><br>        **Plaintiff,**<br><br>        **v.**<br><br>**PAUL C. KAUFMAN, ESQ., KAUFMAN BERN & DEUTSCH, LLP,** and its successors and assigns, **KAUFMAN BERN DEUTSCH & LIEBMAN, LLP,** and its successors and assigns, **KAUFMAN, SEMERANO & LIEBMAN, LLP,** and its successors and assigns, **DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP., ABC CORP., DEF, LLC, XYZ, LLP, JOHN DOES 1 THROUGH 10,** and **JANE DOES 1 THROUGH 10,**<br><br>        **Defendants.** | Civil Action No.: 25-13518 (ES) (AME)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

     This matter comes before the Court on the motion of Defendants Paul C. Kaufman, Esq., Kaufman Bern & Deutsch, LLP, Kaufman Bern Deutsch & Liebman, LLP, and Kaufman, Semerano & Liebman, LLP, (collectively, the "Kaufman Defendants") to dismiss the Complaint of Anup Tamakuwala (an incapacitated person by and through his legal guardian, Hetal Tamakuwala, hereinafter, "Plaintiff"), (D.E. No. 1 ("Complaint" or "Compl.")), for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (D.E. No. 6 ("Motion")).

     The Court has carefully considered the parties' submissions in connection with the Motion, as well as the balance of the record, and decides the matter without oral argument.  *See* FED. R.

C<small>IV</small>. P. 78(b); L. Civ. R. 78.1(b).  For the reasons stated herein, the Kaufman Defendants' motion to dismiss is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

Plaintiff brings this legal malpractice matter against his former attorney and the attorney's affiliated law firms.  (Compl. ¶ 1).  Plaintiff alleges that between 2006 and 2017, the Kaufman Defendants (including Paul C. Kaufman, Esq. ("Kaufman") and his affiliated law firms) served as his "trusted legal counsel" and "were actively and intimately involved in Plaintiff's most sensitive family disputes, legal challenges, and business dealings." (*Id.* ¶ 12).  In particular, Plaintiff alleges that in 2006, Defendants Kaufman and Kaufman Bern & Deutsch, LLP ("KBD") represented him in litigation arising from "an inter-family dispute related to the Tamakuwala and Suratwala families and their various business holdings in the hotel/motel business".[1]  (*Id.* ¶¶ 12 & 15).  The Complaint further points to various communications and invoices between 2009 and 2014, including a letter from Plaintiff to Defendant Kaufman expressing appreciation for Kaufman's legal services over "several years," and correspondence relating to legal proceedings arising from a home invasion, as evidence of the parties' continuing attorney-client relationship and Defendants' ongoing legal representation of Plaintiff.  (*Id.* ¶¶ 18–21).

According to the Complaint, however, in 2017, and without formally terminating their prior representation of Plaintiff, obtaining Plaintiff's written consent, or informing Plaintiff of his right to object, Defendants Kaufman and Kaufman, Semerano & Liebman, LLP ("KSL") accepted service and appeared on behalf of Plaintiff's relatives—Jugmohan ("Jack") [Suratwala], Tansukh ("Dan") [Suratwala], and Trupti Suratwala (together, the "Suratwalas")—in litigation Plaintiff

---

[1]     *See Hetal Tamakuwala v. Jugmohan Suratwala, et al.*, No. BER-C-313-06 (N.J. Super. Ct. Law Div., Bergen Cnty. 2006).

initiated against the Suratwalas pending in the Superior Court of New Jersey, Bergen County[2] (the "2017 litigation"). (*Id.* ¶¶ 22–29). Specifically, Defendants represented Jack, Dan, and Trupti in the 2017 litigation initiated by Plaintiff and Heena Tamakuwala and Leena Panwala—Plaintiff's mother and sister, respectively. (*Id.* ¶ 24). Plaintiff concedes that the 2017 litigation raised "claims related to the same businesses and financial dealings at issue in the 2006 [l]itigation." (*Id.* ¶ 22).

Plaintiff alleges that the Kaufman Defendants utilized Plaintiff's "confidential and privileged information"—obtained from Defendants' prior representation of Plaintiff—against him in the 2017 litigation. (*Id.* ¶ 30). Specifically, Plaintiff alleges that the Kaufman Defendants relied on an internal email discussing "loans and unpaid salary claims related to the family business" to challenge Plaintiff's credibility and assert statute-of-limitations defenses during settlement negotiations. (*Id.* ¶¶ 31–32). Additionally, Plaintiff asserts that the Kaufman Defendants exploited their prior knowledge of his prior business dealings, litigation strategies, negotiation posture, and personal circumstances to pressure him into accepting unfavorable settlement terms, while concealing their prior attorney-client relationship from the court and opposing counsel. (*Id.* ¶¶ 33–34). The 2017 litigation ultimately settled and the parties fully executed a settlement agreement in January 2020. (*Id.* ¶¶ 35–36).

Plaintiff additionally alleges that the Kaufman Defendants improperly disclosed and weaponized confidential and privileged information obtained during the course of their prior representation of Plaintiff by sharing that information with parties directly adverse to Plaintiff in the 2017 litigation. (*Id.* ¶ 34). The allegedly disclosed information included nonpublic financial information concerning family business entities, Plaintiff's rough ownership interests and capital contributions, legal advice and discussions concerning unpaid salary claims and business-fund

---

[2]     *See Tamakuwala v. Suratwala*, Docket No. BER-C-135-17 (N.J. Super. Ct. Law Div., Bergen Cnty. 2017).

transfers, and litigation and settlement strategies developed during prior attorney-client communications.  (*Id.* ¶ 38).

Plaintiff further alleges that during the same time period, the Kaufman Defendants "exploited the existence of the 2017 litigation to pressure [Plaintiff] into transferring his interests in Sita Ram LLC (also known as Best Western, Bronx) to Leena—whom Kaufman now represents, despite her previously being adverse to his then-clients."  (*Id.* ¶ 39).

Finally, Plaintiff alleges that he never executed a written conflict waiver and never consented, either orally or in writing, to Defendants' representation of parties adverse to him.  (*Id.* ¶ 40).

### B.    Procedural History

On July 18, 2025, Plaintiff initiated this lawsuit against the Defendants,[3] setting forth causes of action for: (i) Legal Malpractice; (ii) Breach of Fiduciary Duty; (iii) Intentional Tortious Misconduct; (iv) Breach of Confidentiality; and (v) Tortious Interference with Business Relationships.  (*See generally id.*).

Following Plaintiff's commencement of this action, the Kaufman Defendants filed the present motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* D.E. Nos. 6 & 6-1 ("Mov. Br.")).  Plaintiff opposed the Motion, (D.E. No. 7 ("Opp. Br.")), and the Kaufman Defendants filed a reply, (D.E. No. 8).  The Motion is fully briefed and now ripe for adjudication.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  "To survive a motion to

---

[3]    On November 25, 2026, Plaintiff voluntarily dismissed Defendant DeCotiis, Fitzpatrick, Cole & Giblin, LLP ("DeCotiis") from this action; thus, Decotiis is not a party to the instant Motion.  (D.E. Nos. 10 & 11).

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. On a Rule 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The burden is on the moving party to show that the plaintiff has not stated a facially plausible cause of action. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) ("When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that plaintiff has not stated a claim.") (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

In evaluating a plaintiff's claims, the Court considers the allegations in the complaint, as well as the documents attached to and specifically relied upon or incorporated therein. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("'[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.'" (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (internal quotation marks omitted))); *see also Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003). The Court may also consider "matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v.*

5

*Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B *Wright & Miller's Federal Practice & Procedure* § 1357 (3d ed. 2004))).

## III.   DISCUSSION

### A.   Plaintiff's Legal Malpractice Claim

In Count I of the Complaint, Plaintiff raises a claim of legal malpractice against the Kaufman Defendants. (Compl. ¶¶ 45–59). According to Plaintiff, the Kaufman Defendants failed to "diligently, zealously, and properly represent the Plaintiff"; failed to "maintain privileged confidences"; and "utiliz[ed] confidential information to the detriment of the Plaintiff." (*Id.* ¶¶ 48 & 53). The Kaufman Defendants contend that Plaintiff's legal malpractice claim is time-barred as the current matter was filed on July 18, 2025, whereas the alleged adversarial representation by the Kaufman Defendants occurred in 2017. (Mov. Br. at 2). Specifically, "on May 9, 2017, Plaintiff filed a lawsuit against members of the Suratwala family – asserting claims related to the same businesses and financial dealing at issue in the 2006 litigation." (*Id.* (quoting Compl. ¶ 22)). The Kaufman Defendants further contend that because Plaintiff cited to an August 3, 2017 letter from the Kaufman Defendants to Plaintiff's counsel in the Complaint, "Plaintiff was aware that the Kaufman Defendants were representing his adversaries and allegedly utilizing privileged and/or confidential information learned from their prior relationship against him to his detriment." (*Id.* at 4). According to the Kaufman Defendants, Plaintiff's claim accrued when he suffered actual damages and knew, or through the exercise of reasonable diligence, should have known, the facts

6

underlying the alleged malpractice. (*Id.* at 9). The Kaufman Defendants assert that their "adversarial representation was open and obvious to Plaintiff from the outset of the 2017 Action." (*Id.* at 10).

Additionally, the Kaufman Defendants point to a state-court opinion issued on December 5, 2018. (*See id.* & D.E. No. 6-3, Ex. 1 to D.E. No. 6-2 (Chipko Certification) at 1–7). In that proceeding, Plaintiff sought to rescind the settlement agreement that resulted from mediation of the 2017 litigation, which the parties entered on August 17, 2018. (*Id.*). Thereafter, the state court ordered enforcement of the settlement agreement. (*Id.*). Thus, the Kaufman Defendants argue that Plaintiff's claims are untimely regardless of whether the cause of action accrued on August 3, 2017, when the allegedly privileged information was disclosed; August 17, 2018, when Plaintiff executed the settlement agreement; or December 5, 2018, when the state court ordered enforcement of that agreement. (*Id.* at 10–11). Under any of these accrual dates, they contend, "Plaintiff's claims are way out of time and are barred by New Jersey's six-year statute of limitations." (*Id.* at 11).

In opposition, Plaintiff argues that the Kaufman Defendants' representation and concealment was ongoing through 2020, making this action timely under New Jersey's six-year statute of limitations. (Opp. Br. at 2 (ECF Pagination)). Specifically, Plaintiff invokes the continuing-representation doctrine. (*Id.* at 4). According to Plaintiff, "the Complaint alleges that the Kaufman Defendants continued to act on Plaintiff's behalf through the final execution of the settlement agreement in January 2020 and remained involved in representing its terms and distributing proceeds." (*Id.* (citing Compl. ¶¶ 36 & 41–43)). In addition to the continuing-representation doctrine, Plaintiff argues that under New Jersey's discovery rule, Plaintiff's claim would still be timely as the rule tolls accrual "until the plaintiff knew or reasonably should have

known of the facts giving rise to the malpractice claim." (*Id.* at 5 (first citing *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973); and then citing *Grunwald v. Bronkesh*, 621 A.2d 459, 463 (N.J. 1993))). According to Plaintiff, "the Kaufman Defendants concealed their prior representation from the court and opposing counsel, thereby preventing Plaintiff from discovering the full extent of their conflict of interest." (*Id.* (citing Compl. ¶¶ 26–27 & 34)). Therefore, Plaintiff contends that he could not reasonably understand that Defendant Kaufman's actions had caused him substantial harm until the settlement was fully executed in January 2020, when "its terms and consequences became known." (*Id.* (citing Compl. ¶ 36)).

Furthermore, Plaintiff argues that "dismissal on limitation grounds is reserved for cases where untimeliness is clear from the face of the complaint." (*Id.* at 6 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997))). Here, Plaintiff argues, based on the alleged "continuous representation, concealment of the conflict, and the delayed discovery of the resulting harm," that untimeliness is not apparent from the face of the Complaint and therefore the Kaufman Defendants' motion to dismiss should be denied. (*Id.* at 6–7).

As a threshold matter, the Court must determine whether Plaintiff's legal malpractice claim is timely. *See McHale v. Kelly*, No. 11-0143, 2011 WL 4899987, at *3 (D.N.J. Oct. 14, 2011). This Court sits in diversity and therefore applies New Jersey substantive law, including New Jersey's statute-of-limitations principles. *See In re Asbestos Litig.*, 829 F.2d 1233, 1237 (3d Cir. 1987) (holding that courts "apply the substantive law produced by . . . the highest court of the [relevant] state"); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Statutes of limitations are substantive for *Erie* purposes. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945). Here, the parties agree that New Jersey law governs the issues of when Plaintiff's legal malpractice claim against the Kaufman Defendants accrued and expired. (*See generally*, *e.g.*, Mov. Br.; Opp. Br.).

8

Accordingly, the Court applies New Jersey law to determine when Plaintiff's cause of action accrued.

New Jersey law provides for a six-year statute of limitations for legal malpractice claims. *See McGrogan v. Till*, 771 A.2d 1187, 1189 (N.J. 2001) (noting "[f]or more than twenty-five years, an uncontested principle of New Jersey's decisional law has been that the six-year statute of limitations of N.J.S.A. 2A:14–1 applies to legal-malpractice actions"); *see Grunwald*, 621 A.2d at 461 (discussing accrual of legal malpractice claims in relation to six-year statute of limitations); *see also* N.J.S.A. § 2A:14–1. The limitations period begins to run when a claim accrues, which is governed by New Jersey's discovery rule, which operates "to postpone the accrual of a cause of action when a plaintiff does not and cannot know the facts that constitute an actionable claim." *Grunwald*, 621 A.2d at 492. Under that rule, accrual is tolled until the plaintiff "discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez*, 300 A.2d at 565.

In the context of professional malpractice, "a claim accrues when: (1) the claimant suffers an injury or damages; and (2) the claimant knows or should know that its injury is attributable to the professional negligent advice." *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509, 516 (N.J. 1995) (citing *Grunwald*, 621 A.2d at 464). Accordingly, the discovery rule focuses on a plaintiff's knowledge of both "injury" and "fault." *Grunwald*, 621 A.2d at 463 (quoting *Lynch v. Rubacky*, 424 A.2d 1169, 1171 (N.J. 1981)). A plaintiff acquires knowledge of fault when he or she "knows or should know the facts underlying those elements, not necessarily when a plaintiff learns the legal effect of those facts." *Id.*

The United States Court of Appeals for the Third Circuit has observed that the Supreme Court of New Jersey has declined to adopt a bright-lined rule for determining when such

9

knowledge arises. *See Dixon Ticonderoga Co. v. Est. of O'Connor*, 248 F.3d 151, 162 (3d Cir. 2001). Rather, "[d]epending on the circumstances, knowledge of fault may occur before or during a judicial resolution of the underlying action." *Grunwald*, 621 A.2d at 466; *see also Lapka v. Porter Hayden Co.*, 745 A.2d 525, 530 (N.J. 2000) (explaining that courts "impute discovery if the plaintiff is aware of facts that would alert a reasonable person to the possibility of an actionable claim; medical or legal certainty is not required."). Consistent with that principle, courts applying New Jersey law have recognized that the discovery rule ceases to toll the limitations period once a plaintiff "clearly knew or should have known that he was harmed by his attorney's negligent advice." *McHale*, 2011 WL 4899987, at *5 (quoting *Vastano v. Algeier*, 837 A.2d 1081, 1085 (N.J. 2003)). As *McHale* explained, New Jersey law emphasizes that "the discovery period ends when a plaintiff discovers the facts—not the law—essential to the malpractice claim[.]" *Id.* Applying these rules, the Court concludes that Plaintiff's legal malpractice claim is barred by New Jersey's six-year statute of limitations.

Plaintiff first argues that his claim is timely because the Kaufman Defendants allegedly continued to represent him through 2020 and because the settlement agreement arising out of the 2017 Litigation was not "fully executed" until January 2020. (Opp. Br. at 4–5). In support of that argument, Plaintiff invokes the continuing-representation doctrine and cites *McGrogan v. Till* and *Grunwald v. Bronkesh*. (*Id.*). The Court is unpersuaded. As an initial matter, Plaintiff's reliance on *McGrogan* is misplaced. *McGrogan* addressed whether a legal malpractice claim arising from counsel's representation in a criminal prosecution is governed by the two-year statute of limitations set forth in N.J.S.A. § 2A:14-2 rather than the six-year limitations period generally applicable to legal malpractice actions under N.J.S.A. § 2A:14-1. *See McGrogan*, 771 A.2d at 1188. The decision does not adopt or discuss a continuing-representation doctrine. *See generally id.* The

10

Court further notes that the doctrine relied upon by Plaintiff derives principally from New York's continuous-representation doctrine. As this Court in *McHale* explained, New York recognizes a rule under which "the Statute of Limitations on [a] malpractice claim" may be tolled until ongoing representation concerning the same matter is completed. *McHale*, 2011 WL 4899987, at *5 (discussing New York law). Plaintiff has failed to cite any authority that New Jersey applies the same doctrine. Rather, New Jersey applies the discovery rule and focuses on when a plaintiff knew or reasonably should have known the facts constituting the alleged malpractice and resulting injury. *See Grunwald*, 621 A.2d at 464. To the extent *Grunwald* discussed the continuing representation doctrine, it does not hold that the accrual date is premised on whether an attorney-client relationship is ongoing.[4] *See id.* at 467. Consequently, the relevant question is not whether the Kaufman Defendants allegedly remained involved in matters concerning Plaintiff after 2018, but whether Plaintiff had knowledge of the alleged wrongdoing and resulting harm more than six years before filing this action. The Complaint demonstrates that he did.

According to Plaintiff's own allegations, the Kaufman Defendants began representing parties directly adverse to him in 2017. (Compl. ¶¶ 22–29). Critically, Plaintiff alleges that, on May 22, 2017, Defendants Kaufman and KSL "affirmatively accepted service of the Complaint for the 2017 Bergen County Litigation on behalf of these adverse parties," appeared against him in the 2017 litigation, and did so without giving prior notice or obtaining his consent. (*Id.* ¶¶ 25 & 29). Then, as Plaintiff alleges, on August 3, 2017, Defendants Kaufman and KSL sent a letter

---

[4]    In *Grunwald*, when discussing the discovery rule, the New Jersey Supreme Court observed that "an allegedly-negligent attorney's continuous representation on the appeal of the underlying claim may prevent a litigant from becoming aware of the key element of fault." *Grunwald*, 621 A.2d at 466 (quoting *Aykan v. Goldzweig*, 569 A.2d 905, 907 (N.J. Law. Div. 1989)). However, the Court did not adopt New York's continuous-representation doctrine, under which the statute of limitations is tolled until the attorney's representation concerning the matter terminates. Rather, *Grunwald* held that legal-malpractice claims are governed by the discovery rule and cited continuing representation only as a circumstance that may affect when a plaintiff discovers the facts underlying a claim. *See id.* at 464–67. Indeed, the language cited by the Court from *Aykan* provided that a continuing course of representation postpones accrual unless plaintiff discovers injury or concealment earlier. *Id.* at 466.

to Plaintiff's counsel that expressly cited an internal email Plaintiff had shared during the course of his prior attorney-client relationship with Defendants, using that communication to challenge Plaintiff's credibility and to argue that his claims were time-barred. (*Id.* ¶¶ 31–33). Plaintiff characterizes this letter as reflecting "intimate, privileged knowledge of Plaintiff's prior business dealings that could only have been gleaned from the confidential attorney-client relationship." (*Id.* ¶ 33). Plaintiff further alleges that Defendants used confidential and privileged information to "coerce Plaintiff to accept materially worse settlement terms" and that he "felt immense pressure" in "the settlement negotiation room" and "did not believe he had any meaningful choice but to accept the settlement terms that were being imposed." (*Id.* ¶ 34).

These allegations, taken as true, as the Court must at this stage, establish that Plaintiff knew, or should have known of the facts constituting the alleged malpractice in August 2017, when his new attorney received the letter that he now characterizes as a key instrument of Defendants' wrongdoing. Indeed, Plaintiff knew or should have known about the very conduct he identifies as malpractice—i.e., the adverse representation, the alleged misuse of confidential information, the alleged conflict of interest, and the alleged coercion during settlement negotiations—while it was occurring. For example, Plaintiff asserts that Defendants "weaponize[ed]" the "confidential, privileged information" they had "to coerce Plaintiff to accept materially worse settlement terms" and that "[d]espite knowing that Plaintiff was represented by counsel," "Defendant directly contacted Plaintiff on his personal cell phone and issued threats [to Plaintiff]." (Compl. ¶ 34). Those "materially worse settlement terms" were memorialized in a settlement agreement attached to the Complaint as Exhibit L. (*Id.* ¶ 35). That agreement bears Plaintiff's signature and is dated December 2018. (*Id.* (citing Ex. L)). Based on Plaintiff's own allegations and documentation, he knew or should have known about both the allegedly wrongful conduct and the resulting injury no

later than December 2018—the date of the agreement he now contends was procured through Defendants' conflict of interest and their alleged misuse of confidential information. Thus, by Plaintiff's own account, he knew or should have known of the alleged fault well before July 18, 2019—six years before filing this matter.

Plaintiff's position that this matter began to accrue in January 2020 is unavailing. New Jersey law does not require that all consequences of an alleged malpractice be fully realized before a claim accrues. To the contrary, the New Jersey Supreme Court has explained that "[i]t is not necessary that all or even the greater part of the damages have to occur before the cause of action arises." *Vision Mortg. Corp. v. Patricia J. Chiapperini, Inc.*, 722 A.2d 527, 530 (N.J. 1999) (quoting *Grunwald*, 621 A.2d at 465 (citation omitted)). Likewise, "the limitations period begins to run when a plaintiff knows of the fault and injury and 'not necessarily when a plaintiff learns the legal effect of those facts.'" *Merlin's Kids, Inc. v. Kevork Adanas, PC*, No. A-3482-23, 2025 WL 1289092, at *3 (N.J. Super. Ct. App. Div. May 5, 2025) (quoting *Grunwald*, 621 A.2d at 463 (citation omitted)). Although aspects of the settlement may have continued to be implemented after 2018—including the execution of releases and distribution of proceeds—the alleged facts do not alter the allegations reflecting that Plaintiff *already* knew or should have known of the alleged wrongdoing and resulting injury much earlier than the settlement's final execution in January 2020. Rather, the injury was complete when the parties drafted the settlement agreement dated December 2018—whether executed simultaneously or on a later date. *See Tengood v. City of Philadelphia*, 529 F. App'x 204, 209–10 (3d Cir. 2013) (holding that the limitations clock "begins to tick 'at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury'" (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009))).

Plaintiff's related argument that the Kaufman Defendants "concealed their misconduct" by failing to disclose their prior representation of Plaintiff to the court and opposing counsel, (Opp. Br. at 6 (ECF Pagination)), fares no better. Even accepting that allegation as true, the concealment Plaintiff describes is concealment from the court and opposing counsel, not from Plaintiff himself. (*Id.*). Plaintiff does not allege that he was unaware that the Kaufman Defendants were representing his adversaries or using his confidential information. (*See generally* Compl.). To the contrary, the Complaint is replete with allegations that Plaintiff experienced the adverse representation, beginning with the August 2017 letter, and was subjected to coercion in the settlement negotiation room. (Compl. ¶¶ 25, 31–34). Indeed, Plaintiff goes so far as to allege that Defendants "***directly contacted Plaintiff*** on his personal cell phone and issued threats." (*Id.* ¶ 34 (emphasis added)). Under these circumstances, the discovery rule and principles of equitable tolling do not postpone accrual because Plaintiff knew or should have known about the facts essential to his claims. *See Grunwald*, 621 A.2d at 464; *see also Sysol v. Sanchez*, No. A-3427-23, 2025 WL 3043386, at *4 (N.J. Super. Ct. App. Div. Oct. 31, 2025) (holding that equitable tolling "should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice" (internal quotation marks omitted) (quoting *Brinder v. Price Waterhouse & Co., L.L.P.*, 393 N.J. Super. 304, 313 (App. Div. 2007))).

Thus, the Court finds that by no later than December 2018, Plaintiff knew or should have known about both the alleged misconduct and the alleged resulting injury. Accordingly, the Court concludes that Plaintiff's legal malpractice claim accrued no later than December 2018, the date of the settlement agreement that forms the basis of Plaintiff's allegations and that he now contends was the product of Defendants' misconduct. Because Plaintiff did not commence this action until

14

July 18, 2025, more than six years later, Count I is barred by the six-year statute of limitations and must be dismissed. *See* N.J.S.A. § 2A:14-1.

### B.    Plaintiff's Other Claims

The same result applies to Plaintiff's remaining claims. Counts II through V—for breach of fiduciary duty, intentional tortious misconduct, breach of confidentiality, and tortious interference with business relationships—arise from the identical factual allegations underlying the malpractice claim: namely, Defendants' alleged conflict of interest, unauthorized disclosure of confidential information, adverse representation, and coercive conduct during the 2017 litigation and settlement. (*See generally* Compl. ¶¶ 61–87). Plaintiff concedes that "the same timeliness analysis applied to all claims arising from the same conduct." (Opp. Br. at 7 (ECF Pagination)). Plaintiff identifies no independent injury or independently accruing wrongful act separate from the conduct forming the basis of the malpractice claim. (*See generally id.*). Accordingly, the Court finds, because those claims are predicated upon the same allegedly wrongful conduct and, for the same reasons discussed above, accrued no later than December 2018, they are likewise untimely. *See* N.J.S.A. § 2A:14–1 (providing six-year limitations period for, *inter alia*, tortious injury to the rights of another and contractual claims); *see also Kant v. Seton Hall Univ.*, 422 F. App'x 186, 190 (3d Cir. 2011) (applying six-year statute of limitations to tortious interference claim). Accordingly, Counts II through V are dismissed as time-barred.

## IV.    CONCLUSION

For the foregoing reasons, the Kaufman Defendants' motion to dismiss is **GRANTED**. All claims asserted in the Complaint are time-barred under New Jersey's six-year statute of limitations, *see* N.J.S.A. § 2A:14–1, and are hereby **DISMISSED**. An appropriate Order accompanies this

Opinion.

**Dated**: June 26, 2026

*s/ Esther Salas*

**Esther Salas, U.S.D.J.**
